SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Charlotte Robinson v. Frank Vivirito** (A-63-12) (072407)

**Argued January 7, 2014 -- Decided March 26, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court revisits the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, to determine the temporal and physical limits of the duty of a school principal to protect third parties passing across school property.

On a Saturday in September 2009, plaintiff Charlotte Robinson used the schoolyard of Dr. J.P. Cleary Middle School as a short cut to walk from her home to a nearby diner. As she crossed the schoolyard, she was attacked by a dog. The dog's owner lived in a house adjacent to the school and routinely chained the dog to a tree. Nine days before the attack, defendant Kenneth Nelson, the school principal, had received a letter complaining of two other attacks by the dog on or near school property. He did not contact the police or animal control. When Robinson was attacked, Nelson was not on the premises, and no school functions or authorized non-school functions occurred that day.

Robinson filed a complaint against Nelson and defendant Buena Regional School District Board of Education (collectively, "the school defendants") seeking damages for the injuries she sustained during the attack. She contended that Nelson knew of the threat of harm posed by the dog and was responsible for the safety of the school premises. Robinson alleged that Nelson failed to exercise his supervisory responsibilities, thereby causing or contributing to her injuries. The trial court granted summary judgment to the school defendants, finding that N.J.S.A. 59:4-2, which permits liability of a public entity for a dangerous condition of public property, does not extend to injuries that occur due to activities conducted on the property. The court also found that Nelson owed no duty of care to Robinson because he did not own, control or harbor the dog.

Robinson appealed, and the Appellate Division reversed. The panel reasoned that, since Nelson would have a duty to address the presence of a stray dog on school property during the school day, there was no legal basis to exclude liability to people who enter school property at other times. Thus, a jury could reasonably find that Nelson had a duty to contact the police or animal control and request the dog's removal because of its propensity to escape and attack people on or near school property, and that his failure to do so was a proximate cause of Robinson's injury. The Court granted the school defendants' petition for certification. 214 N.J. 117 (2013).

**HELD:** Under the TCA, a school principal owes no duty of care to a third party who decides to use school property after hours for personal purposes and is injured by a stray animal that is neither owned nor controlled by school personnel.

1. The TCA reestablished the immunity of public entities, while also detailing those acts and omissions for which a public entity or employee may be held liable in damages. N.J.S.A. 59:2-2 imposes vicarious liability on a public entity for acts or omissions of a public employee acting within the scope of his authority. Vicarious liability for the negligent act of an employee is the primary source of liability for public entities. (pp. 8-9)

2. The fundamental elements of a negligence claim are a duty of care owed by a defendant to a plaintiff, the defendant's breach of that duty, injury to the plaintiff proximately caused by the breach, and damages. Foreseeability is a critical factor in analyzing the existence of a duty of care to avoid harm to another, but whether such a duty exists ultimately is governed by principles of fairness and public policy. Additionally, a landowner's duty to third persons to exercise reasonable care is generally grounded in the status of the third person, such as guest, invitee or trespasser. Thus, the relationship of the parties, nature of the risk, opportunity to exercise care, and public interest in recognizing a duty of care all influence the analysis. Ultimately, courts must assess the totality of

1

the circumstances that a reasonable person would consider relevant in recognizing a duty of care to another. (pp. 9-11)

3. Courts have recognized that landowners owe a duty of care to persons lawfully on their premises. Several cases also have addressed public entity liability for injuries resulting from the negligence of school officials. Specifically, school personnel have a duty to exercise reasonable supervisory care for the safety of students entrusted to them. However, a school district's responsibility to protect students' safety is temporally and physically limited, and its obligation to act reasonably does not diminish the responsibilities of others. With respect to dog attacks on public property, a public entity may be liable for resultant injuries if the owner of the dog is a public employee and he or she fails to control the dog while on public property. Benjamin v. Corcoran, 268 N.J. Super. 517 (App. Div. 1993). (pp. 11-15)

4. In determining whether the school defendants owed a duty of care to Robinson, the Court first considers whether the harm to Robinson was foreseeable. To that end, the Court asks whether Nelson was reasonably able to ascertain that his conduct could injure Robinson in the manner it did. Although the dog may have been removed had Nelson called the authorities during the week, neither Nelson nor the school board had any control over the dog. Moreover, once the school day ended, Nelson could not monitor conduct on or near school grounds. His absence from the premises on the weekend foreclosed his ability to protect anyone who traversed the property, as well as his ability to foresee any harm to Robinson. (pp. 16-17)

5. Whether the harm was foreseeable is not dispositive as to whether a duty of care existed. The Court also must consider whether recognition of a duty of care to Robinson and similarly situated persons comports with fairness and public policy. In doing so, the Court analyzes the parties' relationship, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. There was no relationship between Robinson and the school defendants. She was a trespasser without right, license or consent to traverse school grounds. Although the nature of the risk attendant to a roaming, vicious dog is manifest, Nelson had limited opportunity and ability to minimize the risk of an attack by the dog on school premises when school was not in session. Unlike a dog owner, who is subject to strict liability for attacks, a non-owner such as Nelson cannot control the dog's location and behavior. In order to prevent an attack, Nelson was limited to calling the authorities. Moreover, when the dog entered the school yard on the weekend, any opportunity to intercede to protect third parties was absent. In sum, there is no public interest in imposing a duty of care on school personnel to protect persons with no relationship to the school from attacks by a neighbor's dog. (pp. 17-19)

6. The school principal had no duty of care to Robinson under the facts of this case. Robinson had no relationship to the school, and Nelson had no authority to control the dog or remove it from a place near the school, and, on a weekend or extended recess, no opportunity to prevent an attack on a passerby or interloper on school property. Imposing a duty of care to prevent an attack by a neighbor's dog under these circumstances far exceeds the temporal and physical limits of the authority and ability of a school principal to exercise reasonable care to minimize the risk of harm to those lawfully on school property. Without the ability to control the behavior and location of the dog, imposition of a duty of care would render the school defendants an insurer of the negligent behavior of others, a result which is contrary to the purpose of the TCA. Finally, Benjamin v. Corcoran, 268 N.J. Super. 517 (App. Div. 1993) is factually distinguishable and irrelevant to the inquiry here since the defendants in Benjamin owned the dog, lived on the premises of the public facility, and knew of the dog's dangerous tendencies. (pp. 19-21)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

CHARLOTTE ROBINSON,

    Plaintiff-Respondent,

        v.

FRANK VIVIRITO, FRANKIE
KELLER, BUENA REGIONAL SCHOOL
DISTRICT BOARD OF EDUCATION,
and KENNETH S. NELSON,

    Defendants-Appellants.

> Argued January 7, 2014 – Decided March 26, 2014
>
> On certification to the Superior Court,
> Appellate Division.
>
> Gregory J. Giordano argued the cause for
> appellants (Lenox, Socey, Formidoni,
> Giordano, Cooley, Lang & Casey, attorneys;
> Michael Pattanite, Jr., on the briefs).
>
> Melville D. Lide argued the cause for
> respondent (Radano & Lide, attorneys).

    JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

    In this appeal we revisit the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, to determine the temporal and physical limits of the duty of a school principal to protect third parties passing across school property. Here, a woman used the school yard as a short-cut to reach a local diner. As she walked across the grounds, a stray dog attacked her causing

1

injuries requiring medical attention. The attack occurred on a Saturday when school was not in session and no school or school-sanctioned events occurred. Plaintiff contends that a resident of an adjacent property owned the dog that attacked her, that the dog slipped its leash and previously had accosted passersby, and that the principal of the school had notice of the other incident. Therefore, plaintiff argues that the principal and the school district had a duty to prevent future attacks from this known dangerous dog.

The trial court granted the motion for summary judgment filed by the school principal and the school board. The court held that the school principal owed no duty to the injured plaintiff. The Appellate Division disagreed. It held that a jury could find that the school principal had a duty to take measures to prevent entry of a known dangerous dog onto school property, and that a jury could find that the school principal breached that duty.

Under the circumstances of this case, we determine that a school principal owes no duty of care to a third party who decides to use school property after hours for personal purposes and is injured by a stray animal that is neither owned nor controlled by school personnel. We, therefore, reverse the judgment of the Appellate Division.

I.

2

We derive the facts viewed in the light most favorable to plaintiff from the record submitted in support of and in opposition to defendants' motion for summary judgment. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012); Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). The record reveals that on Saturday, September 12, 2009, plaintiff Charlotte Robinson was walking from her home to a nearby diner when she was attacked by a dog. When Robinson encountered the dog, she was on the grounds of the Dr. J.P. Cleary Middle School, a school facility owned and operated by defendant Buena Regional School District Board of Education (Buena Board). Defendant Frankie Keller, who lived in a house adjacent to the school, owned the dog and routinely chained the dog to a tree.

Robinson testified in her deposition that she had seen Keller's dog chained to a large tree close to the school property on several occasions. On September 3, 2009, nine days before the dog attacked and bit her, Kenneth Nelson, the school principal, signed the receipt for a letter sent to him by certified mail from two persons. The letter stated that the neighbor's dog had attacked them on or near the school property. Nelson did not contact the police or animal control officials after receipt of the September 3, 2009 letter. He notified the local animal control authority on at least two other occasions to report the presence of unleashed and unattended dogs on

3

school property.  On each occasion, animal control responded within hours of his call.  Additionally, Nelson was not on the premises at any time on Saturday, September 12, 2009; and no school functions or authorized non-school functions occurred on school property that day.

## II.

Robinson filed a complaint seeking damages for the injuries she received from the dog against defendant Frank Vivirito, the owner of the house where the owner of the dog lived, and an amended complaint against Keller, the owner of the dog, and the Buena Board.[1]  In a second amended complaint, Robinson added the school principal as a defendant.  In her complaint against the Buena Board and the school principal (the school defendants), Robinson contended that the school principal was responsible for the safety of the school premises, that he had been notified of the presence of a dangerous dog on or near school property, and that the dog posed a threat of harm to those on or near school property.  Robinson alleged that the school principal failed to exercise his supervisory responsibilities of the property and this failure caused or contributed to the injuries sustained by her.  Robinson maintained that the Buena Board was vicariously liable for the negligence of the school principal.  Robinson

---

[1] The claims against both Vivirito and Keller were dismissed by the trial court for lack of prosecution.

4

also alleged that the known presence of a vicious dog on school premises created a dangerous condition of school property.

The school defendants filed a motion for summary judgment arguing that the presence of a wayward dog on its premises did not create a dangerous condition of school property. They also argued that the school principal owed no duty of care to Robinson for events that occurred on school property after hours and from an animal they did not own or control. The trial judge granted the motion.

In a written opinion, the trial judge held that N.J.S.A. 59:4-2, which permits liability of a public entity for a dangerous condition of public property, does not extend to injuries that occur due to activities conducted on the property. Stated differently, a dangerous condition refers only to the physical condition or features of the property. The trial judge also determined that the school principal owed no duty of care to Robinson because the principal did not own, control, or harbor the dog that attacked her. The judge distinguished the ruling in Benjamin v. Corcoran, 268 N.J. Super. 517 (App. Div. 1993), noting that the dangerous dog in that case which bit a young girl on the grounds of a public facility was owned by the resident assistant superintendent of the facility. The Appellate Division held in Benjamin that knowing the dog had bitten others, the public official had a duty to remove or

5

control the dog and prevent injuries caused by the dog to those who lawfully entered the grounds of the public facility.

The Appellate Division reversed the order granting summary judgment to the school defendants. The panel held that the school principal had a duty "to address a known danger from the dog to people who come onto the property." The appellate court reasoned that the school principal would have had an obligation to address the presence of a stray dog on the school premises during the school day. Therefore, the panel declared it could discern "no basis to exclude, as a matter of law, liability to people who come onto the school's property at other times." The panel concluded that a jury could reasonably find that the school principal "had a duty to contact the police or the animal control officer to request that the dog be removed because of its propensity to escape and attack people on or near the school property, and that his failure to do so was a proximate cause of [plaintiff's] injury."

This Court granted the school defendants' petition for certification. 214 N.J. 117 (2013).

III.

A.

The school defendants argue that the school principal owed no duty to protect passersby and people using school grounds as a short-cut during non-school hours from the actions of a stray

6

aggressive dog or any other stray animal. They distinguish Benjamin on its facts. They emphasize that the school principal did not own or control the dog that bit Robinson. The school principal had called the animal control officer when he learned of a stray dog on school premises before the incident involving Robinson. The school defendants emphasize that the school principal had no legal authority to control the dog that bit her. Ultimately, they urge that permitting Robinson to pursue a negligence claim based on the actions or lack of action of the school principal "would be an assault on the Tort Claims Act and on the traditional principles of negligence."

B.

Robinson urges the Court to hold that the public entity should be vicariously liable for the acts or omissions of its employee, the school principal. She argues that the school principal was in charge of the school buildings and grounds and responsible for the safety of those in the building and on the grounds. Robinson contends that the school principal also had notice of the aggressive behavior of the dog before the attack on Robinson but did nothing to protect her or the safety of those using school grounds. She argues that the facts of this case are directly analogous to prior Appellate Division precedent, which determined that a jury could find a public entity liable for the failure of owners of an aggressive dog to

7

take measures to protect residents of a public facility, their visitors, and users of the grounds from the actions of a dangerous dog. Robinson concedes, as she did in her brief in the Appellate Division, that a dog on public property does not constitute a dangerous condition of public property, and that she is not entitled to relief pursuant to N.J.S.A. 59:4-2.

IV.

The TCA reestablished the immunity of public entities, while also creating a scheme to impose liability on public entities to ameliorate "the harsh results of the [sovereign immunity] doctrine." Beauchamp v. Amedio, 164 N.J. 111, 115 (2000); N.J.S.A. 59:1-2. Therefore, while "public entity immunity is the theme that permeates the statute, [the TCA] also details certain acts and omissions for which a public entity or public employee may be held liable in damages." Beauchamp, supra, 164 N.J. at 115-16.

The provision at the heart of this case, N.J.S.A. 59:2-2, imposes vicarious liability on a public entity for acts or omissions of a public employee acting within the scope of his authority. The statute provides:

> a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

8

> b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.
>
> [N.J.S.A. 59:2-2.]

This Court has commented that vicarious liability of the public entity for the negligent act of its employee is the primary source of liability for the public entity. Tice v. Cramer, 133 N.J. 347, 355 (1993). Consistent with the purpose of the TCA to relax the general rule of sovereign immunity for the tortious acts of public employees, the TCA permits liability for the negligent acts of public employees only on the same terms as a private individual. N.J.S.A. 59:2-1(b); Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 407 (1986).

The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013); Weinberg v. Dinger, 106 N.J. 469, 484 (1987). The issues of whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996); Kelly v. Gwinnell, 96 N.J. 538, 552 (1984). The determination of the existence of a duty of care to avoid harm to another is

ultimately governed by fairness and public policy.  Carvalho, supra, 143 N.J. at 573.

Foreseeability is a critical but not dispositive factor in the analysis of whether a duty of care to avoid harm to a third party is recognized.  Ibid.; Goldberg v. Hous. Auth. of Newark, 38 N.J. 578, 583 (1962).  Foreseeability often subsumes many factors deemed relevant to the recognition of a duty.  Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194 (1994).  Those factors include the relationship between the plaintiff and the alleged negligent party, the nature of the risk, and the ability to alter behavior to avoid injury to another.  Ibid.  Foreseeability as a determinant of a duty to exercise care to another is distinguishable, however, from foreseeability as a determinant of whether a breach of duty proximately caused an injury.  Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502-03 (1997).  As it influences the recognition of a duty of care, foreseeability refers to

> "the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care."
>
> [Id. at 503 (quoting Hill v. Yaskin, 75 N.J. 139, 144 (1977)).]

10

When a person alleges that a landowner has acted negligently, the existence of a duty by a landowner to exercise reasonable care to third persons is generally governed by the status of the third person – guest, invitee, or trespasser – particularly when the legal relationship is clearly defined. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15 (2004); Clohesy, supra, 149 N.J. at 502. When the legal relationships are not clearly defined, other factors may influence the recognition of a duty of care by property owners to protect third parties from harm, such as the knowledge of circumstances that may cause harm to another, including criminal activity on the property or in the area and the extent of such activity. Clohesy, supra, 149 N.J. at 516-17; Hopkins v. Fox & Lazo, 132 N.J. 426, 438 (1993). The relationship of the parties, the nature of the risk, the opportunity to exercise care, and the public interest in recognition of a duty of care also influence the analysis. Jenkins v. Anderson, 191 N.J. 285, 295 (2007). In the end, a court must assess the totality of the circumstances that a reasonable person would consider relevant in recognizing a duty of care to another. Clohesy, supra, 149 N.J. at 508, 514.

In Clohesy, a patron was abducted from the parking lot of a supermarket by a man loitering in the area and later was murdered. Id. at 499-500. The Court determined that business

11

owners and landlords have a duty to protect patrons from foreseeable criminal acts by third parties on the premises.  Id. at 516.  It held that the scope of that duty includes security for the parking lot.  Id. at 517.  The Court determined that the precise nature of the security, such as security guards or surveillance cameras or both, to discharge the duty of care to patrons was a question for the jury.  Id. at 519.

This Court also has held that a school district owed a duty of care to a contractor who was retained by the district and who was killed when a trench on school property collapsed. Pfenninger v. Hunterdon Cent. Reg'l High Sch., 167 N.J. 230, 241-42 (2001).  The school district owed a duty of care to the contractor because it had reserved the right to purchase all building materials under its contract with the contractor and had failed to purchase the specific materials listed in the architectural designs.  Id. at 242.

On the other hand, the Appellate Division has determined that a school district was not liable for injuries sustained by an adult night student, who was struck by a car as she crossed a road from a shopping center parking lot to reach the school in which she was enrolled.  Ross v. Moore, 221 N.J. Super. 1, 4 (App. Div. 1987).  There, the plaintiff contended that there was insufficient on-site parking and school officials negligently failed to provide reasonably safe passage from the off-site

12

alternative. Id. at 4-5. The appellate court declined to apply Warrington v. Bird, 204 N.J. Super. 611 (App. Div. 1985), certif. denied, 103 N.J. 473 (1986), which recognized a standard of care to provide safe passage for commercial establishments which provided off-site parking to patrons. Ross, supra, 221 N.J. Super. at 7. The panel reasoned that extension of that rule was not appropriate because the school district did not own or control the shopping center parking lot; therefore, it had no duty to provide students safe passage from a lot it did not control. Ibid.

Several cases have addressed public entity liability for injuries resulting from negligence of school officials. In Jenkins, supra, the Court addressed the scope of a school principal's duty to protect students. 191 N.J. at 289. A third grade student left school grounds unattended following an early dismissal. Id. at 290. Two and one-half hours later, he was struck by a car and seriously injured at an intersection several blocks from the school and in a different direction from his house. Ibid. Recognizing that school officials have a general duty to exercise reasonable care for the children entrusted to them, the Court proceeded to consider whether this duty extended up to and through the dismissal process. Id. at 296. The Court concluded that school officials had such a duty, id. at 298-99, and the scope of the duty was "defined by a standard of

13

reasonableness," id. at 301.  The Court noted, however, the

practical limits of the duty of care to protect students' safety

during all activities in the course of or after dismissal.  The

Court stated:

> Our holding should not be interpreted to
> suggest that schools are guarantors of
> students' safety with respect to all
> activities during or after dismissal.  A
> school district's responsibility has
> temporal and physical limits, and its
> obligation to act reasonably does not
> diminish the responsibilities [of others].

> [Id. at 306.]

The Court's ruling in Jenkins built on prior precedent that

recognized the duty of school personnel to exercise reasonable

supervisory care for the safety of students entrusted to them

and their accountability for injuries that occurred due to a

failure to discharge that duty.  See Frugis v. Bracigliano, 177

N.J. 250, 268 (2003) ("A board of education must take reasonable

measures to assure that the teachers and administrators who

stand as surrogate parents during the day are educating, not

endangering, and protecting, not exploiting, vulnerable

children."); Jackson v. Hankinson, 51 N.J. 230, 235-36 (1968)

(recognizing duty of school officials to provide reasonably safe

transportation when they decide to provide service); Titus v.

Lindberg, 49 N.J. 66, 73 (1967) (recognizing duty of school

14

personnel to exercise reasonable supervisory care for safety of students during school hours).

A public entity may be liable for injuries sustained on public property from a dog on public property, if the owner of the dog is a public employee and fails to control the dog on public property. Benjamin, supra, 268 N.J. Super. at 520. In Benjamin, the plaintiff was sleigh-riding on the grounds of a public residential facility for retired firemen when she was bitten by a dog. Ibid. The facility's assistant superintendent[2] and the director of nursing, a married couple who resided on the premises, owned the dog. Ibid. On two separate occasions, the dog attacked individuals. On one occasion the attack occurred on the public sidewalk adjacent to the facility; the other incident was not near the premises. Ibid. The Appellate Division held that the persons who owned or controlled the dog had a duty to exercise reasonable care to prevent the dog from attacking not only those who resided in the facility but also those who entered the property. Id. at 526. The panel reasoned that the standard of care owed by the public employee, who controlled the dog and had notice of the dangerous nature of the dog, included removal of the dog from the premises. Id. at 527.

V.

---

[2] The assistant superintendent died before the incident, however, the dog continued to reside at the facility in the care of his wife, the director of nursing.

15

Applying these principles to this appeal, we must determine whether the school defendants owed a duty of care to plaintiff. This analysis requires us to consider whether the harm to plaintiff was foreseeable, and whether recognition of a duty of care to plaintiff under these circumstances comports with considerations of fairness and public policy. We first address the foreseeability of the harm experienced by plaintiff.

Foreseeability requires a determination of whether the defendant was reasonably able to ascertain that his allegedly negligent conduct could injure the plaintiff in the manner it ultimately did. McDougall v. Lamm, 211 N.J. 203, 225-26 (2012). Robinson alleges that the school principal was on notice that the neighbor's dog was vicious, that it had a propensity for breaking free of its restraints and had previously attacked two people on or near school property. Further, she claims that the school principal failed to call the police and have the dog removed prior to her encounter with the dog. Robinson contends that the failure to have the dog removed when school was in session permitted the dog to attack her on the weekend. In support of this contention, Robinson relies on the school principal's testimony that he had caused stray dogs to be removed from school premises when they had been found on school property when school was in session.

16

To be sure, if the school principal had called the police or animal control officers during the week, the dog might have been removed and would not have been on or near school property over the weekend. On the other hand, neither the school principal nor the school board had any control over the dog or activities on the neighboring property. At best, the school principal could express his concern about the dog to its owner, and to the owner of the premises where the dog was restrained, or request that police corral the dog or counsel the owner of the dog to refrain from chaining the dog to a tree in such close proximity to the school yard.

Moreover, once the school day ended, the school principal had no ability to monitor conduct on or near school grounds. The absence of the principal from the premises on the weekend due to the conclusion of school activities foreclosed his ability to undertake any action to protect anyone who traversed school grounds and his ability to appreciate the foreseeability of any harm to Robinson.

Foreseeability, however, is not the sole determinative factor to a decision to impose a duty of care to a third party. The Court must also consider whether the recognition of a duty of care to Robinson and similarly situated persons comports with fairness and public policy. Several factors inform this inquiry, including "the relationship of the parties, the nature

17

of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." McDougall, supra, 211 N.J. at 225; Jenkins, supra, 191 N.J. at 295.

In this case, there was no relationship between the school defendants and Robinson. She was neither a student nor the parent or guardian of a student. She had not been invited onto the school property for a school activity or a community activity conducted on school grounds. She was not a vendor or contractor invited onto school property to provide a service or perform repairs. She was, in fact, a stranger to the mission of the school and a trespasser. She had no right or license and certainly no consent to use school grounds as a short-cut. Her only connection or relationship with the school was her unilateral decision to use the school yard as a path to a local diner.

To be sure, the nature of the risk attendant to a roaming, vicious dog is manifest. Once a dog has broken from its restraints, it may wander and confront and attack people it encounters. It is for this reason that a dog owner is strictly liable to a person injured "regardless of the former viciousness of such dog or the owner's knowledge of such viciousness." N.J.S.A. 4:19-16. Countering the risk attendant to a roaming dog with a propensity to attack people it encounters is the

18

limited opportunity and ability of the school principal to alleviate or minimize the risk of an attack by a roaming dog on persons on school premises when school is not in session. The Legislature imposes strict liability on a dog owner because the owner has the authority and opportunity to control the behavior and location of the dog. A non-owner, such as the school principal, has no ability to control the location and behavior of a neighbor's dog. His actions to prevent an encounter with a roaming dog and to prevent an attack by that dog are limited to calling the police or animal control officers. The principal could not force the police to respond in a timely manner or to take other measures to collect the dog, if it has wandered off the school premises. Moreover, when a stray dog enters the school yard on a weekend, any opportunity to intercede to protect third parties is absent.

We cannot identify any public interest in imposing a duty of care on school personnel to protect persons with no relationship to the school from attacks by a neighbor's dog. The Legislature has imposed the duty of care with respect to dogs on owners because of their opportunity to control the behavior and location of their dog.

To summarize, we hold that the school principal had no duty of care to Robinson under the facts of this case. Robinson had no relationship to the school. The school principal had no

19

authority to control the behavior of the dog, no authority to remove the dog from a place proximate to the school, and no opportunity after the cessation of classes and after-school activities, on a weekend or during an extended recess to take any action to prevent an encounter between the dog and a passerby or interloper on school property. The imposition of a duty of care to third parties to prevent an attack by a dog owned by a neighbor under these circumstances far exceeds the temporal and physical limits of the authority and ability of the school principal to exercise reasonable care to minimize the risk of harm to those lawfully on the school property. Absent some ability to control the behavior and location of the dog, imposition of a duty of care does not foster the public interest. Rather, it renders the school defendants an insurer of the negligent behavior of others, which is contrary to the purpose of the TCA.

Finally, the ruling in Benjamin v. Corcoran provides no basis to impose a duty of care on the school defendants to Robinson. Benjamin is factually distinguishable in all material respects. The ownership of the dog by the defendants, who not only worked but also lived on the premises of the public facility and had notice of its dangerous tendencies, renders the case of no relevance to our inquiry.

VI.

We, therefore, reverse the judgment of the Appellate Division.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

21

SUPREME COURT OF NEW JERSEY

NO. ___A-63___                    SEPTEMBER TERM 2012

ON CERTIFICATION TO ___Appellate Division, Superior Court___


CHARLOTTE ROBINSON,

      Plaintiff-Respondent,

          v.

FRANK VIVIRITO, FRANKIE
KELLER, BUENA REGIONAL SCHOOL
DISTRICT BOARD OF EDUCATION,
and KENNETH S. NELSON,

      Defendants-Appellants.


DECIDED _____March 26, 2014_____
         Chief Justice Rabner      PRESIDING

OPINION BY _____Judge Cuff_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____


| CHECKLIST | REVERSE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1