**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0121-18T3

ROSENA PITTS, As Administratrix
Ad Prosequendum for the Estate of
TAM MARIE PITTS GADDY and
ROSENA PITTS, As Administratrix
Ad Prosequendum FOR THE ESTATE
OF NATASIA GADDY,

     Plaintiff-Appellant,

v.

LEWIS and BARBARA GIANINI,

     Defendants-Respondents/
     Third-Party Plaintiffs,

v.

MICHAEL BRADY,

     Third-Party Defendant.
_____

     Submitted October 8, 2019 – Decided December 4, 2019

     Before Judges Yannotti and Firko.

     On appeal from the Superior Court of New Jersey, Law
     Division, Bergen County, Docket No. L-0318-15.

Law Offices of Rosemarie Arnold, attorneys for appellant (Maria R. Luppino, on the briefs).

Methfessel & Werbel, attorneys for respondents (James H. Foxen, on the brief).

PER CURIAM

Rosena Pitts, as administratrix ad prosequendum for the Estate of Tam Marie Pitts Gaddy and the Estate of Natasia Gaddy, appeals from an order entered by the Law Division on August 3, 2018, which granted summary judgment to defendants Lewis Gianini and Barbara Gianini and dismissed plaintiff's complaint with prejudice.[1] We reverse.

## I.

This action arises from the murders of Tam Marie and her five-year-old daughter Natasia, which occurred on Monday, January 28, 2013, in their residence on West Palisade Avenue in Englewood. Plaintiff, who is Tam Marie's mother, brought this action against defendants, the owners of the building in which Tam Marie and Natasia were living when they were killed. Defendants asserted a third-party claim against Michael Brady, Tam Marie's ex-boyfriend.

---

[1] To avoid confusion, in this opinion, we refer to the persons involved by their first names.

The building in which Tam Marie and Natasia resided is a multi-family, two-story structure, which contains four residential units. There are two entrances to the main lobby, which provides access to the units on the lower level and to the stairs leading to the units on the second floor. Defendants managed and operated the property, but did not live there. Tam Marie and Natasia resided in an apartment on the first floor, which contained two bedrooms and a basement.

On Tuesday, January 29, 2013, plaintiff was unable to reach Tam Marie by phone and went to the property to check on her. She entered the building through the front door, which was unlocked, and knocked on the door to Tam Marie's apartment. After plaintiff received no response, she called out Tam Marie's name from outside the bedroom window. She received no response.

Plaintiff had to go to work so she asked her husband James Pitts and daughter Angele Frazier to check on Tam Marie and Natasia. On their way to the apartment, James and Angele stopped at a local restaurant where they ran into Brady. Brady said he was unaware of Tam Marie's whereabouts, but agreed to accompany James and Angele to the property. At the property, they entered the building through the front door but were unable to access Tam Marie's apartment, which was locked. Brady then pulled his car into the driveway,

3

positioned it below Tam Marie's bedroom window, stood on the car's roof, pushed in an unlocked bedroom window, and looked inside.

Brady fell back and stated, "[T]hey killed her." Brady jumped through the open window and unlocked the door to the apartment, letting James and Angele enter. They found Tam Marie and Natasia. Both were dead. Tam Marie's body was lying face down on her bed, with multiple stab wounds. Natasia's body was found on the floor in the basement, with a plastic bag placed over her head. Apparently, she had been suffocated.

Brady was brought to the Englewood Police Department (EPD) for questioning. During the initial interview, Brady was at times yelling and crying. He reportedly stated, "I can't believe I killed a little girl." Later, a detective from the Bergen County Prosecutor's Office (BCPO) and an officer from the EPD questioned Brady. He denied any involvement in the murders.

Thereafter, another detective from the BCPO interviewed Brady. He said he and Tam Marie had been dating for about three or four years. He told the detective he lived with his parents, but had been sleeping at Tam Marie's apartment almost every night. He stopped spending the night there sometime around Christmas 2013. The detective told Brady that Tam Marie's neighbors had reported that he and Tam Marie fought and had physical altercations.

4

Brady admitted he and Tam Marie had argued and that during the first year of their relationship, he "pushed" her. He denied going to Tam Marie's apartment on the day of the murders or the Sunday before. Brady said he had a key to the apartment, but returned it to Tam Marie when she demanded it back.

Brady also told the detective he did not know how Tam Marie "got killed." He stated that Tam Marie's husband could possibly be the perpetrator. It appears, however, that Tam Marie's husband had a stroke and was in the hospital at the time. Brady said he did not know if Tam Marie had any enemies who would want to hurt her. He denied killing Tam Marie and Natasia. He also denied stating, "I can't believe I killed a little girl." Nevertheless, Brady was charged with murder and related offenses.

In January 2015, plaintiff brought this action and asserted wrongful death and survivorship claims against defendants. In the complaint, plaintiff alleged that Brady murdered Tam Marie and Natasia. She claimed defendants operated and maintained the property negligently, and alleged this was the cause of Tam Marie's and Natasia's deaths. Defendants denied liability and asserted a third-party claim against Brady.

While the action was pending, Brady was tried before a jury and found not guilty on all counts. Later, after the completion of discovery, defendants

filed a motion to bar the report and testimony of plaintiff's security expert, Joseph J. Stine, arguing that Stine's report was based on speculation, not facts. Defendants also filed a motion for summary judgment. Plaintiff opposed the motions.

The Law Division judge thereafter heard oral argument on the motions and placed an oral decision on the record. The judge barred Stine from testifying at trial on the issue of causation, and granted defendants' motion for summary judgment. The judge memorialized his decision in orders dated August 3, 2018. This appeal followed.

II.

On appeal, plaintiff argues that the trial court erred by granting defendants' motion for summary judgment. Plaintiff contends defendants breached their duty, as owners and landlords of the subject premises, to protect Tam Marie and Natasia from foreseeable criminal acts by third-parties. Plaintiff further argues that there are genuine issues of material fact as to whether defendants' alleged breach of that duty was a proximate cause of the harm suffered by Tam Marie and Natasia.

When reviewing an order granting summary judgment, we apply the same standard the trial court applies when ruling on a summary judgment motion.

Qian v. Toll Bros. Inc., 223 N.J. 124, 134 (2015) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)). Summary judgment should be granted if "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment . . . as a matter of law." R. 4:46-2(c).

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

We "must grant all the favorable inferences to the non-movant." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 537 (1995). "[T]he essence of the inquiry . . . [is] 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

III.

As noted, plaintiff argues that defendants, as owners and landlords, owed Tam Marie and Natasia, as tenants of the premises, a duty of care to protect them from foreseeable criminal acts by third parties on the property. Defendants contend they owed the decedents no such duty.

7

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). "Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others." Trentacost v. Brussel, 82 N.J. 214, 222 (1980) (quoting Rappaport v. Nichols, 31 N.J. 188, 201 (1959)).

"The issue [of] whether a defendant owes a legal duty is generally a question of law for the court to decide[,]" as is the "scope" of that duty. Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502 (1997). Accordingly, we review the trial court's legal determination that defendants did not owe a duty of care to Tam Marie and Natasia de novo. Peguero v. Tau Kappa Epsilon Local Chapter, 439 N.J. Super. 77, 88 (App. Div. 2015) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The "traditional" understanding of the landlord-tenant relationship "d[id] not, without more, impose upon the landlord a duty to protect the tenant from the crime of third persons." Trentacost, 82 N.J. at 220 (quoting Braitman v. Overlook Terrace Corp., 68 N.J. 368, 374 (1975)). The modern view, however,

8

recognizes that "landlords have a duty to protect patrons and tenants from foreseeable criminal acts of third parties occurring on their premises." Clohesy, 149 N.J. at 504; see also Kuzmicz v. Ivy Hill Park Apts., 147 N.J. 510, 517 (1997) ("[L]andlords and business owners should be liable for foreseeable injuries that occur on their premises."). In other words, "[a] landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord retains control." J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 218 (2019) (emphasis omitted) (quoting Scully v. Fitzgerald, 179 N.J. 114, 121-22 (2004)).

Foreseeability as it relates to an alleged tortfeasor's duty of care, as opposed to legal causation, "refers to . . . 'the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.'" Clohesy, 149 N.J. at 502-03 (quoting Hill v. Yaskin, 75 N.J. 139, 144 (1977)). "Foreseeability is a critical but not dispositive factor in the analysis of whether a duty of care . . . is recognized" which "often subsumes" other factors "relevant to the recognition of a duty." Robinson, 217 N.J. at 208 (internal citations omitted) (citing Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 573 (1996); Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc., 135 N.J. 182, 194 (1994)).

"The [c]ourt must also consider whether the recognition of a duty of care . . . comports with fairness and public policy." Id. at 213. These principles are informed by several factors, including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. (quoting McDougall v. Lamm, 211 N.J. 203, 225 (2012)).

Ultimately, however, "a court must assess the totality of the circumstances that a reasonable person would consider relevant in recognizing a duty of care to another. Id. at 209. Therefore, "the determination of whether a duty exists does not depend on the existence of prior similar criminal incidents . . . ." Clohesy, 149 N.J. at 508. However, such criminal activities can be considered as part of the totality of the circumstances, and the "foreseeability analysis [may] turn[] in large part on the [property] owner's awareness of prior crimes on its property . . . ." Desir, Estate of ex rel. Estiverne v. Vertus, 214 N.J. 303, 319 (2013).

Since, the duty analysis "is both very fact-specific and principled[,]" the analysis will necessarily require comparison of the facts in this case to others in analogous circumstances. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439

(1993); see also Peguero, 439 N.J. Super. at 88 (quoting Desir, 214 N.J. at 317) ("[T]he court must engage in a so-called 'full duty analysis.'").

In Braitman, for example, the landlord failed to provide adequate locks on the door to the plaintiff's premises. Braitman, 68 N.J. at 371-72. The plaintiff repeatedly complained about the inoperable lock. Ibid. Little more than a week after the plaintiff's initial complaint, a thief entered the apartment and stole over $6,000 worth of personal belongings. Id. at 371-72.

The apartment was located in an area with frequent "break-ins" and an applicable regulation required landlords to furnish an operable door lock. Id. at 373, 383-84. Based on this evidence, the Court held that the tenant could recover from the landlord "upon proper proof that the la[ndlord] unreasonably enhanced the risk of loss due to theft by failing to supply adequate locks to safeguard the tenant's premises after suitable notice of the defect." Id. at 383.

Similarly, in Trentacost, the Court held that a landlord could be liable to a tenant for failing to provide adequate security for common areas of rental premises. Trentacost, 82 N.J. at 228. The apartment was located in a high-crime area with a history of burglaries, and the landlord failed to install a working lock on the building's front door. Id. at 218-19, 222. The Court held that the landlord "effectively and unreasonably enhanced the risk" of criminal harm to his tenants

11

because he failed to install a lock on the door leading to the building's lobby. Id. at 222.

Furthermore, in Clohesy, the Court found a business owner liable for failing to provide security in the parking lot. Clohesy, 149 N.J. at 516-17. In that case, a supermarket customer was abducted from the parking lot and then killed. Id. at 499-500. The plaintiff presented no evidence of a "prior carjacking, murder or similar criminal incident" where the decedent was abducted; however, the plaintiff established that numerous criminal acts had been committed in close proximity to the property. Id. at 500-01, 517.

In determining whether the defendant owed the decedent a duty, the Court considered: sixty criminal incidents that occurred in close proximity to the property, largely consisting of shopliftings; that decedent was abducted next to a section of the store with no windows or glass doors; the property's lack of surveillance cameras or safety warnings; the parking lot's location next to a gasoline station and liquor store that attracted loiterers; the parking lot's size; the type of business operated; the nature and circumstances of neighboring businesses; the increasing crime level of the neighborhood; and the plaintiff's expert report which concluded that the failure to provide security "deviated from the industry's standard of care and proximately caused" the decedent's death. Id.

at 503-04, 516-17.  The Court held that the criminal act was "foreseeable" and imposed upon the defendant a duty to provide reasonable security.  Id. at 517, 519-20.

IV.

Here, the motion judge stated that "[t]here ha[d] to be some showing that the landlord had access to and knew of . . . [s]ome form of criminal activity in the area."  The judge also stated, "[w]hether it be [from] two weeks ago, two months ago, whatever," plaintiff should have presented the court with some criminal analysis of the neighborhood or the property.  The judge found that the other evidence presented by plaintiff was insufficient to hold defendants responsible for the fatal injuries the intruder inflicted upon Tam Marie and Natasia.

We are convinced, however, that the judge erred by finding that defendants did not, under the totality of the circumstances, have a duty to protect their tenants from reasonably foreseeable criminal acts by third-parties.  As the Court held in Clohesy, plaintiff was not required to present evidence that the same or similar offenses had been committed on the property or in close proximity to the building where Tam Marie and Natasia were living.  Clohesy, 149 N.J. at 508.  Plaintiff did, however, present other evidence that was

13

sufficient to support the imposition of a duty of care upon defendants under the circumstances.

As noted, plaintiff presented proof that the lock on the entrance door was broken and Tam Marie had complained to Lewis about it. Therefore, a person could enter the building and gain access to the hallway where the door to Tam Marie's apartment was located. Once in the hall, the intruder could force his or her way into the apartment. Lewis claimed that he fixed the front door several times, but plaintiff presented evidence showing that the lock was broken on the date Tam Marie and Natasia were killed. Plaintiff also presented evidence that the door to Tam Marie's apartment did not have a chain-link guard.

In addition, plaintiff presented evidence showing that the window in Tam Marie's bedroom would not lock, and that she had complained to Lewis about that window and other windows in the building. According to plaintiff, Lewis assured Tam Marie "he would take care of" the problem. Lewis claimed the windows in the apartment were not broken, but plaintiff presented evidence that on the day after the murders, Brady was able to gain access through the bedroom window.

Moreover, although the motion judge barred Stine from testifying on causation, a ruling that plaintiff does not challenge, the judge did not strike

14

Stine's opinions regarding defendants' alleged failure to comply with regulations adopted by the New Jersey Department of Community Affairs pursuant to the Hotel and Multiple Dwelling Law (HMDL), N.J.S.A. 55:13A-1 to -28. The regulations apply to defendants' building because it is a "multiple dwelling" under the HMDL and regulations. See N.J.S.A. 55:13A-3(k) and N.J.A.C. 5:10-1.4(b).

In his report, Stine stated that defendants violated the regulation by failing to correct the malfunctioning front-door lock and bedroom window, and by failing to install a chain-door guard to permit partial opening of the door to the apartment. See N.J.A.C. 5:10-19.2(a)(1), (5) to (6), (8). As the judge noted in his decision, Stine did not provide any statistical analysis of the crime in the neighborhood surrounding the property or the property itself.

However, in his report, defendants' expert, Bruce D. Harman, provided a crime analysis of incidents at the property between January 31, 2010, and April 1, 2012. Harman cited eleven incidents, which included five fights or disturbances, one incident of harassment, and one incident of criminal mischief involving Brady.

Harman did not cite any prior burglary or murder in or near the property. He also did not provide any analysis as to whether there had been prior

burglaries or murders in the neighborhood surrounding the property. While plaintiff did not show that the building is in a high-crime area, Harman's analysis shows that the area is not crime-free.

Therefore, considering the totality of the relevant circumstances, we are convinced it was reasonably foreseeable that an intruder could enter defendants' building through the unlocked front door and, once in the entrance hallway, force his or her way into an apartment. It was also reasonably foreseeable that an intruder could gain entrance to Tam Marie's apartment through the broken bedroom window. It was not unreasonable to foresee that such an intruder could harm the occupants of a unit, and that such harm could include physical assault or murder.

We are also convinced that principles of fairness and public policy support imposition of a duty under the circumstances. Robinson, 217 N.J. at 213. In reaching this conclusion, we have considered "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. (quoting McDougall, 211 N.J. at 225).

The record supports the conclusion that defendants had the ability to exercise care in providing adequate security for the building, and that the cost

of fixing the broken lock, installing a chain-link guard on the apartment doors, and repairing the windows would not be unduly burdensome. In addition, the public interest would be served by having landlords comply with the applicable regulations and make reasonable repairs to their properties to protect tenants from the foreseeable risk of criminal acts by third parties.

Our conclusion that defendants owed Tam Marie and Natasia a duty of care is supported by Braitman, where the Court held that the defendant landlord had a duty to protect tenants from foreseeable criminal acts by third parties, and the landlord could be liable for failure to provide the tenant with a functioning door lock, as required by the regulations adopted under the HMDL. Braitman, 68 N.J. at 381. Our conclusion also is supported by Trentacost, where the Court found that the landlord owed tenants a duty to provide adequate security in the common areas on the building. Trentacost, 82 N.J. at 228.

Although in Trentacost, there was evidence that the subject building was located in a high-crime area, under Clohesy, such evidence is not required. As we have explained, location of premises in a high-crime area is one of the factors to be considered in determining whether a landlord has a duty to provide adequate security to tenants to protect them from foreseeable criminal acts by

17

third parties. We conclude that defendants had a duty to protect Tam Marie and Natasia from the risk of criminal acts by third parties in the apartment.

We therefore reverse the order granting summary judgment to defendants and remand the matter for trial. We note that at trial, the jury would be required to determine whether defendants were negligent, and whether defendants' alleged acts or omissions were the proximate cause of the harm that befell Tam Marie and Natasia.

Here, the motion judge commented that plaintiff had not presented sufficient evidence to establish that defendants' alleged negligence was a proximate cause of Tam Marie's and Natasia's deaths. The judge pointed out that no one could say how the intruder, whether it was Brady or someone else, entered the apartment.

The judge also noted that the BCPO had no "solid" conclusions as to whether the intruder entered the apartment through the door or window. However, to prevail on her claim, plaintiff was only required to show, by a preponderance of the evidence, that defendants' alleged negligence was a proximate cause of the harm.

Where, as here, there are alleged concurrent causes of the harm suffered, plaintiff had to show that defendants' negligent conduct was a "substantial factor

that singly, or in combination with other causes," brought about the harm complained of. See Model Jury Charges (Civil), 6.12, "Proximate Cause – Where There is Claim That Concurrent Causes of Harm Were Present" (approved May 1998). See also Komlodi v. Picciano, 217 N.J. 387, 423 (2014) (citing Brown v. United States Stove Co., 98 N.J. 155, 171 (1984)). We are convinced that plaintiff presented sufficient evidence from which a jury could reasonably find that defendants' alleged negligence was a proximate cause of the harm suffered by Tam Marie and Natasia.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0121-18T3