**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2624-24

ROSLYN GILLIARD,

    Plaintiff-Appellant,

v.

THE SHAUGER GROUP, INC.
and SHAUGER PROPERTY
SERVICES, INC.,

    Defendants-Respondents.

_____

        Submitted April 28, 2026 – Decided May 12, 2026

        Before Judges Chase and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7897-21.

        Hanus and Parsons, LLC, attorneys for appellant (Michael J. Hanus, of counsel and on the briefs).

        O'Toole Scrivo, LLC, attorneys for respondents (Amy E. Robinson, on the brief).

PER CURIAM

In this slip-and-fall negligence action, plaintiff Roslyn Gilliard appeals from a March 14, 2025 Law Division order granting summary judgment to defendants, The Shauger Group, Inc. and Shauger Property Services. The motion court ruled as a matter of law that plaintiff could not establish that defendants owed her a duty of care because the "ongoing storm rule" announced in Pareja v. Princeton Int'l Properties, 246 N.J. 546 (2021) applies. Having considered the parties' arguments, the record, and the governing legal principles, we affirm.

I.

We set forth the following facts, viewing all evidence and inferences in favor of plaintiff as required by Rule 4:46-2(c). Plaintiff was employed by the Essex County Division of Citizen Services located on University Avenue in Newark ("the premises").

On February 18, 2021, between 8:30 and 8:40 a.m., plaintiff slipped and fell as she was walking from the underground parking deck across the parking lot to the building entrance. It is undisputed that it was snowing at the time of plaintiff's fall. As plaintiff fell, she used her pocketbook to brace her head and felt her ankle crack. Plaintiff was able to grab her cell phone and call her supervisor for help. Her supervisor arrived with coworkers, security, two sheriff

officers, and a blanket. Plaintiff was on the ground covered in a blanket before sheriff's officers lifted her into a rolling chair and rolled her into the building while she waited for the ambulance. Plaintiff testified at her deposition that, "when I was down[,] I was feeling the ground and I felt ice covered with snow. . . and . . . the area was patches of snow everywhere but I know it was ice because I touched the ground underneath me."

On the date of the accident, Governor Murphy ordered the closure of all New Jersey State offices due to the snowstorm. The Ion Weather Report for this date indicates that the downtown Newark area had approximately four inches of precipitation that began at 6:00 a.m. and ended at 3:00 p.m., with a wintery mix of sleet and freezing drizzle continuing until 11:00 p.m. Certified Local Climatological Data published by the U.S. Department of Commerce stated that snowfall at Newark International Airport only began around 7:00 a.m. Certified Local Climatological Data also showed that there were two prior storms in Newark that month, on February 1, when 15.1 inches of snow fell and on February 7, when 5.7 inches of snow fell.

In February 2021, Essex County had a contract with defendants for snow and ice removal services at the premises. In pertinent part, the contract specifically states:

INSPECTIONS

The County may perform [i]nspections either on a routine basis or [i]f notified of a specific complaint. A log (Exhibit #1) shall be used to document any discrepancies. The Contractor shall be given a copy of the log. In the event, services are unsatisfactory or are not [i]n accordance with the bid specifications, the Contractor shall, upon notification by the County designee, cause the facility to be serviced immediately without additional cost to the County. If an outside Contractor must be called [i]n to complete the job, that charge will be deducted from the non-compliant contractors payments.

. . . .

PERFORMANCE

. . . .

The Contractor must respond as soon as snow starts to commence work specified under this agreement. The Contractor shall provide a dedicated cell phone, or direct contact 24 hours a day, seven days a week to communicate service requests. All locations must have snow and [i]ce completely removed and it must be cleaned during and after every snow event. It cannot accumulate more than 2" at any given time. All snow must be removed and taken from the site. The Department Director, or his/her designee, will provide instructions at that time for the disposition of the snow.

DEICING AGENTS

The Contractor will use ONLY Calcium Chloride at all locations indicated within this agreement unless otherwise specified or directed. Sodium Chloride will

A-2624-24

not be used as an equal substitute for the Calcium Chloride for this agreement. Each day following a snow/and or ice event, when temperatures are at or below freezing, all areas [i]n this specification, including Parking Lots and Parking Decks, must be de-[i]ced to ensure safe access to the facilities during the a.m. and p.m. hours. In the event of a major snow storm, [i].e., 18-20" or a back-to-back snow storm that requires removal of accumulated snow from specific areas, the Department Director or his/her designee will provide [i]nstructions at that time for the disposition of the snow.

The contractor must provide all materials necessary to properly maintain a safe and ice[-]free surface as required. No storage of materials or equipment on site will be permitted by the County.

On the day of the storm, defendant had a total of four employees performing snow and ice removal between 5:00 a.m. and 8:00 p.m. Specifically, employees were tasked with maintaining clear walkways and parking areas, and applied calcium chloride on all unsafe areas. A video of the accident shows at least one of defendant's employees actively removing snow and applying calcium chloride to a walkway behind defendant when she fell.

Plaintiff presented one complaint regarding defendant's work performance before plaintiff's fall. On February 3, 2021, CWA Local 1801 submitted a grievance to Essex County, complaining that the outdoor handicapped spaces at the property had not been fully plowed after a snowstorm.

5

In October 2021, plaintiff filed a complaint against defendants alleging negligence. Due to extensions, discovery lasted almost three years. In December 2024, defendants again moved for summary judgment. On March 14, 2025, the court granted the motion. In granting summary judgment, the motion court relied almost exclusively on Pareja, where the Court adopted the "ongoing storm rule," acknowledging "commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm." 246 N.J. at 558.

This appeal follows.

## II.

We review a summary judgment determination de novo, "applying the same standard as the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). Summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016); R. 4:46-2(c)).

A-2624-24

To determine whether there are genuine issues of material fact, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

It is well-settled that whether a legal duty exists within any given set of facts is a question of law. Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991). Under New Jersey law, questions of law are matters to be decided by the court, not the trier of fact. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, (1996); Kelly v. Gwinnell, 96 N.J. 538, 552 (1984).

"'The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.'" Coleman v.

7

Martinez, 247 N.J. 319, 337 (2021) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)); see also Townsend v. Pierre, 221 N.J. 36, 51 (2015). "It is the obligation of the plaintiff to prove each element." Coleman, 247 N.J. at 337 (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).

III.

Our Supreme Court adopted the ongoing storm rule in Pareja. 246 N.J. at 558. There, the plaintiff slipped, fell, and injured himself on a driveway apron, which was private property owned by the defendant. Id. at 548. In the early morning hours prior to the incident, freezing rain, light rain, and sleet had fallen. Id. at 549. At the time of plaintiff's injury, precipitation was ongoing. Ibid. The Court held "commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm." Id. at 558. In adopting this rule, the Court relieved commercial landowners of the duty to continuously clear snow and ice from their property throughout the duration of an inclement winter weather event. Id. at 557.

The Court in Pareja recognized removing snow during an ongoing storm is an "impossible burden" and "categorically inexpedient and impractical." Id. at 557-58. It found the ongoing storm rule was "consistent with our case law" "[g]iven the unreasonableness of removing the accumulation of snow and ice

8

while a storm is ongoing." Id. at 558. The "Sisyphean" task, id. at 553, of removing snow while it is still snowing is just as burdensome to commercial landowners on private property as it is on public property. The Court specifically described the ongoing storm rule as suspending a landowner's duty "until a reasonable time after the cessation of precipitation" and said the landowner's duty arises "within a reasonable time after the storm." Id. at 548, 558.

The parties agree that plaintiff's slip-and-fall occurred during the snowstorm. Video evidence clearly shows that it was snowing while plaintiff fell and both sets of climatological data that plaintiff included in the record state that it was snowing in Newark when she fell. In fact, the storm did not end until many hours after plaintiff fell. Thus, the ongoing storm rule applies, relieving defendants of any duty of care they may have owed plaintiff. However, Pareja identified two categorical exceptions to the ongoing storm rule: (1) if the commercial landowner exacerbates the risk of harm; or (2) when there was a pre-existing risk of harm on the premises prior to the storm. Id. at 559.

Plaintiff does not contend that any actions of defendant exacerbated the risk of harm. We therefore analyze plaintiff's assertion that the motion court erred in granting summary judgment despite the existence of genuine issues of

material fact as to whether there was pre-existing ice caused by a previous storm that covered the snow and caused plaintiff to fall. We are unpersuaded.

There is no evidence in the record to support plaintiff's allegation that a pre-existing danger existed due to a prior storm either days or weeks beforehand. The fact that plaintiff felt ice covered with snow does not change this equation as there is no evidence there was pre-existing ice. The weather reports reflect that it had started to snow almost two hours beforehand. Even after the court gave three discovery extensions and denied defendant's initial motion for summary judgment for plaintiff to complete discovery, plaintiff chose not to pursue any additional discovery or an expert opinion regarding a pre-existing icy condition.

The union grievance from February 3, 2021, does not support plaintiff's assertion that there was pre-existing ice at the location in the parking lot where plaintiff fell. The union's grievance was from fifteen days prior to plaintiff's fall and in the days between, temperatures changed significantly. Additionally, the grievance was not a complaint about defendant's shoveling and salting generally, but rather a specific complaint that defendant should not block handicapped parking spots while shoveling. Furthermore, there is no evidence any complaint was ever forwarded to defendant. Thus, this union grievance was not germane

A-2624-24

to understanding if plaintiff fell on ice from a previous storm or the one that was ongoing during her fall.

Plaintiff also contends that the trial court's application of <u>Pareja</u> is flawed as it fails to consider the terms of defendant's contract with Essex County and the <u>Pareja</u> Court did not intend for this ruling to relieve private contractors of liability for negligent performance of duties.  We disagree.

Plaintiff failed to prove that defendants did not fulfill their contractual duty with Essex County.  The portion of the contract that plaintiff claims defendants violated states:

> The Contractor must respond as soon as snow starts to commence work specified under this agreement. . . . All locations must have snow and [i]ce completely removed and it must be cleaned during and after every snow event.  It cannot accumulate more than 2" at any given time.

However, defendant had four employees on the premises, shoveling and applying calcium chloride to unsafe areas throughout the entirety of the storm.  At least one of defendant's employees could be found on the premises at all times from 5:00 a.m. to 8:00 p.m., totaling fifteen hours.  Meanwhile, the storm only lasted from 6:00 a.m. to 3:00 p.m., therefore, there was no point during the storm in which a defendant employee was not on the premises shoveling.  Moreover, plaintiff provides no evidence that the snow accumulated past two inches.  Thus,

11

plaintiff has failed to show that defendant violated this portion of the contract; the record only shows proof to the contrary as defendant's employees were actively removing snow and ice in accordance with the contract throughout the day.

The next portion of the contract that plaintiff claims defendant violated states:

> Each day following a snow/and or ice event, when temperatures are at or below freezing, all areas [i]n this specification, including [p]arking [l]ots and [p]arking [d]ecks, must be de-[i]ced to ensure safe access to the facilities during the a.m. and p.m. hours.

Specifically, plaintiff claims that defendants did not ensure that steps were taken to prevent ice from the property days before the storm. However, plaintiff presents no evidence beyond her own speculation that defendants did not prepare the premises. Defendant had employees on the premises at least an hour before snowfall to ensure that they could do just that, ensure that the premises were prepared for the storm. Therefore, plaintiff has failed to show that defendant violated this portion of the contract.

Plaintiff claims that the intention of <u>Pareja</u> was to impose a duty to commercial landowners to clear public sidewalks, and this ruling did not extend

to private snow and ice contractors, which is contrary to the rationale of <u>Pareja</u>.

As the trial court amply stated:

> . . . . There is simply nothing in the majority's explication of the basis for its holding that suggests the Court would find that a property owner or a contractor that begins to manage accumulated snow and ice while a storm is in progress does so at peril of suffering liability if someone is injured during the storm, even though no liability would attach if it chose to do nothing at all. Indeed, a holding to such effect would likely produce a pernicious result of discouraging any effort whatsoever by property owners and their contractors from mitigating the risks arising during an ongoing storm.

Given that most commercial landowners have private snow and ice contractors, the purpose of <u>Pareja</u> would be moot if the holding was not extended to private contractors.

To the extent we have not specifically addressed any of plaintiff's arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

13