**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4920-18

JANE DOE (a fictitious name),

    Plaintiff-Appellant,

v.

RICHARD BURKE, THE
WARREN COUNTY
PROSECUTOR'S OFFICE,
THE COUNTY OF WARREN,
CHRISTOPHER PORRINO,
GURBIR GREWAL, and
THE STATE OF NEW JERSEY,

    Defendants-Respondents.

_____

Argued November 2, 2020 – Decided August 17, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0389-18.

Robert E. Lytle argued the cause for appellant (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Robert E. Lytle, on the briefs).

Michael R. Sarno, Deputy Attorney General, argued the cause for respondents Richard Burke, Warren County Prosecutor's Office, Christopher Porrino, Gurbir S. Grewal, and the State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Michael R. Sarno, on the brief).

Robert E. Levy argued the cause for respondent County of Warren (Scarinci & Hollenbeck, LLC, attorneys; Robert E. Levy, of counsel and on the brief; Jasmine B. Simmons, on the brief).

PER CURIAM

We address whether the Warren County Prosecutor (the prosecutor), the Warren County Prosecutor's Office (WCPO), the Attorney General, and County of Warren (County) have qualified immunity from suit by plaintiff under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2. Plaintiff alleges she is a victim of sexual assault and domestic violence, and that the prosecutor disclosed in a press release, for his personal and political reasons, her name and the nature of the assault. We address whether plaintiff has an independent cause of action against the State of New Jersey (State) and the aforesaid public entities and officials for the claimed violation of the Crime Victim's Bill of Rights (CVBOR), N.J.S.A. 52:4B-34 to -38. We also address the legal viability of tort claims filed against defendant public entities and officials. The issues arise from

2

the trial court's orders dismissing plaintiff's complaint against all defendants under Rule 4:6-2(e) for failing to state causes of action.

We are required in this procedural context to give plaintiff "every reasonable inference of fact[,]" liberally searching the complaint for "the fundament of a cause of action . . . ." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). Applying that standard and limited to the factual circumstances presented in this case, we find a cause of action under the CRA based on the CVBOR against the prosecutor in his individual capacity and reverse the dismissal of that claim. Because of the state of this record, we are not able to reach a conclusion about whether the prosecutor's actions were prosecutorial or administrative. We reverse the dismissal of the tort claims in Counts Four through Seven against the prosecutor in his official and individual capacities. We also reverse the dismissal of Counts Four though Eight against all the remaining defendants.

We emphasize the narrow scope of our decision. We express no opinion about the applicability of the CVBOR in other factual contexts involving other types of crime victims or witnesses. Our opinion does not preclude subsequent motion practice in this case, following discovery.

I.

We glean the facts from plaintiff's amended complaint. Plaintiff Jane Doe broke off her brief engagement to her ex-fiancé in March 2016. On March 17, 2016, he drove from Florida to Virginia, and called plaintiff. When she was not willing to resume their relationship, he purchased duct tape and zip ties. Later, he tried again to convince her to see him, but without success. At 10:30 p.m. that night, after driving to New Jersey, he arrived at plaintiff's residence armed with a nine-millimeter handgun, an extra magazine, two knives, the zip ties and duct tape. When plaintiff answered the door, he forced his way in, and although she was able to lock herself in the bedroom, he broke through the door and sexually assaulted her. Plaintiff tried to escape but could not.

With a knife to her neck, plaintiff's ex-fiancé threatened to kill her, and tied her to a chair. He spoke for hours about death and suicide, expressing there was no way out for him but death. Plaintiff begged for her life and entreated him to leave. "Unwilling to do so, her ex-fiancé emptied his handgun, demonstrated to [p]laintiff how to use the firearm, reloaded it, handed it to [p]laintiff, and then directed [p]laintiff to shoot him in the head." She refused, but once he "issued an ultimatum" that it was this or he would shoot her, plaintiff shot him in the rear shoulder blade "because she did not want to kill him." He

4

yelled and turned toward her, whereupon she shot him again — this time in the shoulder — and she ran from the house and called 911. Her ex-fiancé died at the scene.

Plaintiff alleges her identity was kept confidential during the State Police investigation. She claims she did not discuss what occurred except with her "closest family members and medical providers." The Warren County Grand Jury did not issue an indictment against plaintiff for the shooting, instead returning a "no-bill."

Plaintiff alleges that on August 25, 2016, after the no-bill was returned, the prosecutor either held a press conference or issued a press release that "disclosed to the public the results of the investigation, details from the grand jury presentation, as well as [p]laintiff's identity . . . ." She claims the disclosures by the prosecutor or WCPO were made "willfully, knowingly and for the purpose of political and/or personal gain." Plaintiff claims she was not consulted ahead of time about these disclosures and would have refused permission if asked. She claims she was contacted by members of the public including "professors, teachers, neighbors, friends, family, strangers and reporters" after the disclosures. She now lives "in constant fear," continues to

A-4920-18

be "stigmatized" by the disclosures, experienced "physical and mental anguish" as well as "emotional distress, anxiety . . . and embarrassment."

On August 23, 2018, plaintiff filed an amended complaint[1] against the prosecutor, WCPO, County, the State, former Attorney General Christopher Porrino (the Attorney General) and then Attorney General Gurbir Grewal, seeking compensatory and punitive damages for the prosecutor's comments.[2] Count One alleges that defendants acted under color of law to deprive plaintiff of rights guaranteed by the New Jersey Constitution,[3] including but not limited to: "[t]he right [of] crime victims . . . to be treated with fairness, compassion and respect by the judicial system" and alleges this violated the CRA. The State is not a defendant in Count One.

---

[1] The original complaint was filed on August 20, 2018.

[2] The record does not clarify if the comments were made orally or in a press release. We rely entirely on the amended complaint plaintiff filed for the content of the alleged communications.

[3] Count One of the amended complaint is captioned as a violation of the CRA. The text of Count One does not allege that plaintiff was deprived of statutory rights under the CVBOR; it alleges constitutional violations. Plaintiff's appellate brief argues that her CRA claim is supported by rights under the Constitution and under the CVBOR, both of which were violated. We treat Count One as alleging both a constitutional and statutory violation despite this pleading deficiency.

Count Two alleges the disclosure was a violation by all defendants of the CVBOR that proximately caused plaintiff "anguish, emotional distress, anxiety, fear and embarrassment" for which she seeks monetary and other relief. Count Three alleges that defendants "purposely disclosed information" from the Grand Jury with "the intent to harm" her, an alleged violation of grand jury secrecy under N.J.S.A. 2B:21-10.

Counts Four, Five, Six, and Seven allege common law torts. Count Four alleges an invasion of privacy by intrusion on seclusion. Count Five alleges an invasion of privacy by publicity given to private life. Count Six is a negligence cause of action. Plaintiff alleges defendants owed her a duty as a crime victim to exercise proper care to comply with the Victim's Rights Amendment (VRA) of the Constitution, Art. I, ¶22, and the CVBOR, and to train and supervise qualified law enforcement officers. She claims defendants breached these duties to her, proximately causing damages. Count Seven alleges defendants intentionally inflicted emotional distress by the disclosures. Count Eight alleges all defendants except the prosecutor were vicariously liable under respondeat superior for "tortious actions" by the prosecutor and members of the WCPO.

On December 17, 2018, the County filed a motion to dismiss the amended complaint under Rule 4:6-2(e) for failure to state a claim upon which relief can

be granted. On January 30, 2019, the other defendants filed to dismiss under the same rule. The parties agreed to dismiss certain claims during oral argument of the motions on May 31, 2019.[4]

On June 4, 2019, the trial court granted both motions, dismissing all claims against the County and all State defendants under Rule 4:6-2(e) for reasons it expressed on the record and in its comprehensive written statement of reasons issued the same day. We address the trial court's decision in our analysis of the issues.

Plaintiff appealed the June 4, 2019 orders. She raises the following issues on appeal:

POINT I

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST BURKE UNDER THE TORT CLAIMS

---

[4] Attorneys General Porrino and Grewal were dismissed from Count One in their official capacities because they are not "persons" under the CRA. The parties agreed the State and WCPO were not liable under Counts Three, Four and Seven because these alleged intentional torts. The punitive damages claims under Counts Six, Seven and Eight were dismissed for all defendants except for Attorney General Porrino, Attorney General Grewal and prosecutor Richard Burke in their individual capacities. In her appellate brief, plaintiff dismissed any claims under the amended complaint against Attorney General Grewal because he was not in office until after the events alleged in her complaint. Plaintiff has not pursued the dismissal of Count Three on appeal. We treat the issue about Grand Jury secrecy as abandoned. Muto v. Kemper Reinsurance Co., 189 N.J. Super. 417, 420-21 (App. Div. 1983).

ACT, WHICH ARE NOT SUBJECT TO ANY IMMUNITY SET FORTH IN THAT ACT.

POINT II

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST BURKE UNDER THE NEW JERSEY CIVIL RIGHTS ACT, WHICH ARE NOT SUBJECT TO THE DEFENSE OF QUALIFIED IMMUNITY.

POINT III

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST FORMER ATTORNEY GENERAL PORRINO UNDER BOTH THE TORT CLAIMS ACT AND NEW JERSEY CIVIL RIGHTS ACT.

POINT IV

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST WARREN COUNTY, AS THE EMPLOYER OF PROSECUTOR BURKE AND THE INVESTIGATORS IN THE WARREN COUNTY PROSECUTOR'S OFFICE, BECAUSE THE DISCLOSURE OF PLAINTIFF'S IDENTITY AND DETAILS OF THE CRIMES COMMITTED AGAINST HER, AFTER THE INVESTIGATION OF THE CRIME AND GRAND JURY PROCEEDING HAD BEEN COMPLETED, DID NOT CONSTITUTE AN EXERCISE OF THE PROSECUTOR'S LAW ENFORCEMENT RESPONSIBILITIES.

POINT V

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST THE WARREN COUNTY PROSECUTOR'S OFFICE UNDER THE NEW

A-4920-18

JERSEY CIVIL RIGHTS ACT, THE TORT CLAIM ACT AND VICTIMS RIGHTS ACT.

POINT VI

PLAINTIFF'S COMPLAINT STATES CLAIMS AGAINST THE STATE OF NEW JERSEY UNDER THE TORT CLAIMS ACT AND VICTIM'S RIGHTS ACT.

II.

We review an order dismissing a complaint under Rule 4:6-2(e) by using the same standard as the trial court. Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). The court examines whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:37-2(b). The reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). At the motion to dismiss stage in the litigation, "the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Ibid. At this stage, the plaintiff is "entitled to every reasonable inference of fact." Ibid. We are not bound by the trial court judge's

"construction of the legal principles." Smerling, 389 N.J. Super. at 186 (quoting Lombardo v. Hoag, 269 N.J. Super. 36, 47 (App. Div. 1993)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.

Count One of the amended complaint alleges a violation of the CRA. The CRA provides "any person" who has been

> deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of this State, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with . . . by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

"[O]ur State Civil Rights Act is modeled off of the analogous Federal Civil Rights Act, 42 U.S.C.A. § 1983, and is intended to provide what Section 1983 does not: a remedy for the violation of substantive rights found in our State Constitution and laws." Tumpson v. Farina, 218 N.J. 450, 474 (2014).

11

Our Supreme Court has said the interpretation of Section 1983's parallel provisions may provide guidance under our CRA.  Ibid.

The CRA protects "against the deprivation of and interference with 'substantive rights, privileges or immunities secured by the Constitution or laws of this State,'" in contrast to Section 1983 that concerns procedural and substantive right deprivations.  Id. at 477 (quoting N.J.S.A. 10:6-2(c)). "'Substantive' addresses those rights and duties that may give rise to a cause of action, whereas 'procedural' addresses 'the manner and the means' by which those rights and duties are enforced."  Id. at 478 (citations omitted).

Under Section 1983, the State and "officials acting in their official capacities" are not "persons."  Will v. Mich. Dep't of State Police, 491 U.S. 59, 71 (1988).  We define "person" in the same manner under the CRA, meaning that the State and State officials are not amenable to suit under the CRA.  Endl v. State, 5 F. Supp. 3d 689, 697 (D.N.J. 2014).

The parties agree that the Attorney General acting in his official capacity is not a person under the CRA and was properly dismissed from Count One. However, plaintiff argues the trial court erred by dismissing the WCPO and County of Warren from Count One for the same reason.

County prosecutors have been described "as having a dual or hybrid status." Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996). "When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." Id. at 1505. When they perform "administrative function[s] . . . unrelated to the duties involved in criminal prosecution," they act as county officials. Id. at 1506. Local governments, such as a county and their officials, are "persons" under Section 1983, who are amenable to suit. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).

The trial court observed that as the county's chief law enforcement officer, the prosecutor was responsible for "inform[ing] the citizens of a county as to the outcome of a criminal investigation, especially where a homicide has occurred." In communicating with the press, the trial court noted the prosecutor's actions "were more closely aligned with its prosecutorial, investigative function."

A prosecutor's remarks about the conclusion of an investigation may not be "functionally tied to the judicial process," but can be viewed "an integral part of a prosecutor's job . . . and serve a vital public function." Buckley v. Fitzsimmons, 509 U.S. 259, 277-78 (1993). This final bookend to the investigation and prosecution provides clarity for the parties and public that the matter is concluded and affords the prosecutor the opportunity to explain what

13

occurred and why.  Buckley's comments about the nature of a prosecutor's role in communications with the press were made in the context of analyzing whether a prosecutor should have absolute or qualified immunity, and not in determining whether a prosecutor is a person for purposes of Section 1983 or the CRA.  Ibid. The same issue was presented in Kulwicki v. Dawson, 969 F. 2d 1454, 1466 (3d Cir. 1992) (providing that because communication with the press was not a "core prosecutorial activity," qualified immunity applies rather than absolute immunity).  Neither case addressed the issue of the prosecutor's status under our caselaw.

Whether the prosecutor's alleged actions in this case were prosecutorial or administrative functions is critical in determining whether the prosecutor was acting under the supervision of the Attorney General or acting as a county employee at the time.  See, e.g., Lavezzi v. State, 219 N.J. 163, 175-77 (2014) (explaining these principals given the county prosecutor's hybrid status). However, we cannot definitively determine the issue on the record before us. The complaint does not include the contents of the alleged "press conference" or "press release," except that plaintiff's name was disclosed, nor does it explain any of the circumstances or context surrounding the allegations in plaintiff's complaint.  We simply cannot reach a conclusion in this case.

However, the judge correctly dismissed Count One as to Warren County and the WCPO. Although both may be subject to suit under Section 1983 and the CRA, they are only liable if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or it part the governmental agencies "custom." Monell, 436 U.S. at 690. Simply put, the complaint makes no such allegation.

What remains of the CRA claim under Count One are the claims against the Attorney General and the prosecutor in their individual capacities. The trial court concluded that both were entitled to the defense of qualified immunity because it found the communication to the press did not violate clearly established rights.

"The affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. State, 230 N.J. 84, 97-98 (2017) (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)). This applies to actions brought against public officials under the CRA. Id. at 98.

To determine whether qualified immunity applies, a court must determine "whether: (1) the facts, '[t]aken in the light most favorable to the party asserting the injury[] . . . show the [official's] conduct violated a constitutional right'; and (2) that constitutional 'right was clearly established' at the time that defendant acted." Ibid. (alterations in original) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Whether a right was clearly established must be ascertained "based on the state of the law and facts that existed at the time of the alleged statutory or constitutional violation." Schneider v. Simonini, 163 N.J. 336, 354-55 (2000).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear that a reasonable official understands that what he is doing violates that right.'" Radiation Data, Inc. v. N.J. Dep't of Env't. Prot., 456 N.J. Super. 550, 559 (App. Div. 2018) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). There does not need to be a published opinion directly on point defining the right in order for the right to be clearly established. What is required is that "existing precedent must have placed the statutory or constitutional question beyond debate." Ibid. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Thus, a government official can be considered "on notice

16

that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). The "salient question" is whether the state of the law at the time of the conduct in question gave the government official "fair warning" that their conduct was unlawful. Ibid.

Although the defense of qualified immunity is generally a legal issue to be resolved by the court prior to trial, the New Jersey Supreme Court has noted an exception "when the case involves disputed issues of fact." Brown, 230 N.J. at 99. "In such a circumstance, the case may be submitted to the jury to determine 'the who-what-when-where-why type of historical fact issues,' after which the trial judge may incorporate those findings in determining whether qualified immunity applies." Ibid. (quoting Schneider, 163 N.J. at 359).

In this case, the motions to dismiss were made early in the litigation, prior to discovery. We do not know whether there will be disputed facts about this defense as discovery is pursued.

To determine if qualified immunity applies, we must determine whether in 2016 the law was "sufficiently clear that a reasonable official" in the prosecutor's position would have known that disclosure of plaintiff's name, as a sexual assault and domestic violence victim, along with details about the assault, violated her rights under the CVBOR or the VRA. Id. at 106 (quoting Anderson,

483 U.S. at 640). The trial court determined these rights were not sufficiently clear because plaintiff could not cite any authority that a prosecutor's office had been liable in a similar situation. The trial court noted the VRA and the CVBOR have not been construed in prior cases.

We disagree based on the facts that we are required to accept — that the prosecutor allegedly disclosed to the press the name of a sexual assault and domestic violence victim and details of the assault for his personal or political purposes. In this context and without more facts, we are hard-pressed to say that by 2016, the law was not clearly established that such conduct was unlawful under the CVBOR.

We limit our analysis to the CVBOR.[5] It is not necessary for us to analyze the VRA when we find the rights under the CVBOR. Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) (providing no need to "reach a

---

[5] Plaintiff's amended complaint alleges the unauthorized disclosure violated the CRA by depriving her of her constitutional rights to privacy, liberty, due process, equal protection, reputational security, and her rights as a crime victim "to be treated with fairness, compassion and respect by the criminal justice system." In her appellate brief, she declined to assert any of these grounds other than the right to privacy and rights as a crime victim; thus, we limit our analysis to those alleged harms. See Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App. Div. 2016) ("[A]n issue that is not briefed on appeal is deemed waived.").

constitutional question unless its resolution is imperative to the disposition of litigation").

In enacting the CVBOR in 1985, the Legislature found and declared that crime victims and witnesses were important to the criminal justice system and that their rights "should be given full recognition and protection."  N.J.S.A. 52:4B-35.  To "enhance and protect" their role, the Legislature declared "the improved treatment of these persons should be assured through the establishment of specific rights."  Ibid.  The Legislature found "[t]hese rights are among the most fundamental and important in assuring public confidence in the criminal justice system."  Ibid.  It defined a "victim" as "a person who suffers personal, physical or psychological injury or death or incurs loss of or injury to personal or real property as a result of a crime committed by an adult . . . against that person."  N.J.S.A. 52:4B-37.

In N.J.S.A. 52:4B-36, the Legislature found and declared that crime victims and witnesses "are entitled to the following rights," listing eighteen paragraphs, which included, "(a) To be treated with dignity and compassion by the criminal justice system."  By 1991, the New Jersey Constitution was amended to include similar language, providing, "[a] victim of crime shall be treated with fairness, compassion and respect by the criminal justice system."

<u>N.J. Const</u>. art. I, ¶22.  Although there is no case that directly makes this point, we believe that at the very core of the CVBOR's right to be treated with dignity and compassion is the right by the victim of a sexual assault with domestic violence not to be identified by name to the press.  It bores further into the core of this right when the details of the assault are disclosed, and the disclosure allegedly was for personal or political purposes.  Sadly, we do not know if any of these facts are true.  As already noted, we have not been provided by the parties with what facts were released or even in what format.  The motions to dismiss were made early in the litigation before the facts were developed.  We simply must accept the pleadings at this juncture.

There are many protections against disclosure for victims of sexual assault or domestic violence.  The Court Rules maintain as confidential court records that provide the name and address of sexual assault victims.  Since 2010, <u>Rule</u> 1:38-3(c)(12) has provided that the "[n]ames and addresses of victims or alleged victims of domestic violence or sexual offenses," shall be excluded from public access.  Prosecutors and courts employ fictitious names for sexual assault victims and for their family members in court filings.  <u>See, e.g.</u>, <u>State v. Mauti</u>, 448 N.J. Super. 275, 280 n.1 (App. Div. 2017).

The Legislature has exempted from public access and deemed to be confidential both criminal investigatory records and victims' records, N.J.S.A. 47:1A-3, and has, through the Rape Shield Law, N.J.S.A. 2C:14-7, limited admissibility of prior sexual conduct of sexual offense victims "to protect the privacy and dignity of the victims of sexual crimes." State v. Cuni, 159 N.J. 584, 606 (1999). The Legislature also has privileged victim counselors from being "examined as a witness in any civil or criminal proceeding with regard to any confidential communication." N.J.S.A. 2A:84A-22.15.

As revised in 1993, the Attorney General Standards to Ensure the Rights of Crime Victims (Standards) provide that the name and address of a juvenile victim of sexual assault is not to be identified. See N.J.S.A. 2A:82-46 (providing that in prosecutions involving sexual assault, "the name, address, and identity of a victim who was under the age of 18 at the time of the alleged commission of an offense shall not appear on the indictment, complaint, or any other public record"). Part Three of the Standards include a section on protecting crime victims and classify as a "special victim population" a victim of sexual assault.[6]

---

[6] Enacted in 2019, after the events at issue in this case, there is now a Sexual Assault Victim's Bill of Rights, N.J.S.A. 52:4B-60.1 to -60.3, where the

Our court has found the right to privacy and fair treatment. In <u>State v. Gilchrist</u>, 381 N.J. Super. 138, 147 (App. Div. 2005), we found that the crime victim's "right to privacy" and "her right to be treated with fairness, compassion, and respect" in the VRA were among the factors to be considered in deciding whether a photograph of the crime victim should be provided to the defense under the Sixth Amendment. We determined these rights, as well as other factors, outweighed the benefits of providing the photograph of the victim. <u>Ibid.</u>

This right to dignity and compassion under the CVBOR starts with the obvious: the sexual assault victim's name and details of the assault. This was not changed by the fact that at some point, plaintiff was subject of the prosecutor's investigation. It has long been established that "records relating to a person who was not arrested or charged with an offense" are entitled to "a high degree of confidentiality." <u>N. Jersey Media Grp., Inc. v. Bergen Cnty. Prosecutor's Office</u>, 447 N.J. Super. 182, 211 (App. Div. 2016).

We believe the prosecutor would have had fair warning that his conduct in disclosing to the press the name of a sexual assault and domestic violence victim with the details of the assault for his own personal or political purposes

Legislature declared the public policy of the State "that the criminal justice system accord victims of sexual violence" with rights that include the right "(1) . . . to be treated with dignity and compassion . . . ." N.J.S.A. 52:4B-60.2(c)(1).

A-4920-18

violated established law even if the facts are novel. Thus, we reverse the order dismissing Count One against the prosecutor in his individual capacity.

We do not reach the same result for the Attorney General based on the allegations in the amended complaint. Plaintiff alleges the Attorney General was obligated "to protect and enforce the rights of crime victims . . . ." Plaintiff alleges she is a "crime victim" under the CVBOR. The amended complaint alleges the prosecutor and WCPO made unlawful disclosures about plaintiff to the press. There is no allegation that the Attorney General made disclosures. Count One alleges that defendants, including the Attorney General "unlawfully deprived, interfered with or attempted to interfere with" plaintiff's rights, but there is nothing specific here about the Attorney General. Although the tort claims portions of the amended complaint make claims about lack of training and supervision, those are not made in Count One nor does plaintiff explain what rights to training and supervision by the Attorney General were clearly established under the CRA for plaintiff. Given the absence of allegations against the Attorney General, we affirm the trial court's dismissal of Count One against the Attorney General in his individual capacity.

A-4920-18

B.

Count Two of the amended complaint alleges that as a proximate result of a violation of the CVBOR, plaintiff sustained injuries in the form of "physical and mental anguish, emotional distress, anxiety, fear and embarrassment" for which she seeks damages. Count Two appears to allege a direct cause of action for damages, injunctive relief, and attorney's fees against defendants under the CVBOR statute and is not a claim under the CRA. There is nothing in the CVBOR, however, that authorizes a free-standing civil cause of action for damages. See, e.g., Jurzwiak v. Doe, 415 N.J. Super. 442, 454-55 (App. Div. 2010); Aly v. Garcia, 333 N.J. Super. 195 (App. Div. 2000). Therefore, we affirm the order dismissing Count Two of the amended complaint against defendants on this basis rather than based on qualified immunity.

III.

Counts Four through Seven allege common-law torts for invasion of privacy by intrusion upon seclusion, invasion of privacy by giving publicity to private life, negligence, and intentional infliction of emotional distress. These tort claims are made against all the public entity and public employee defendants. Count Eight alleges the State and State defendants are vicariously liable for the prosecutor's disclosures.

24

A.

The Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, "re-established" sovereign immunity.  D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (citation and alteration omitted).  Under the TCA, a public entity is generally not liable for an injury "whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a).  Where the TCA establishes liability against a public entity, it is entitled to immunities and defenses.  N.J.S.A. 59:2-1(b).  Under N.J.S.A. 59:2-2(a), "[a] public entity is liable for an injury proximately caused by an act or omission of a public employee within the scope of his employment . . . ."  "If the public employee is not liable for an act or omission, the public entity is not liable."  Nieves v. Office of the Pub. Defender, 241 N.J. 567, 575 (2020) (citing N.J.S.A. 59:2-2(b)).

Chapter Three of the TCA concerns liability and immunity of public employees.  Generally, "a public employee is liable for injury caused by this act or omission to the same extent as a private person."  N.J.S.A. 59:3-1(a). However, under N.J.S.A. 59:3-1(c), "[a] public employee is not liable for an injury where a public entity is immune from liability for that injury."  A public employee also is not liable "for an injury resulting from the exercise of judgment

or discretion vested in him." N.J.S.A. 59:3-2(a). "Public employees and public entities, however, 'ha[ve] the burden to plead and prove [an] immunity under the TCA.'" Maison v. N.J. Transit Corp., 245 N.J. 270, 298 (2021) (alterations in original) (quoting Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009)).

"The TCA provides that neither a public entity nor a public employee is 'liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law.'" Id. at 301 (citing N.J.S.A. 59:2-4 (public entity)); see N.J.S.A. 59:3-5 (public employee). "The failure-to-enforce-any-law immunity may be invoked whenever the 'critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law.'" Ibid. (quoting Lee v. Brown, 232 N.J. 114, 127 (2018)).

The TCA also includes a qualified immunity provision for employees. N.J.S.A. 59:3-3 provides "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." "[A defendant qualifies] for this immunity only if [he] engaged in some act or acts to enforce a law." Maison, 245 N.J. at 305. However, a public employee is not "exonerate[d]" from liability if "his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14(a).

## B.

Count Four alleges that defendants are liable for the common-law tort of "intentionally intrud[ing] on [p]laintiff's privacy by unlawfully and unnecessarily disclosing information regarding the attack, sexual assault and killing without her consent." The tort of intrusion on seclusion imposes liability for "intentionally intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 94-95 (1992) (quoting Restatement (Second) of Torts § 652B (Am. Law. Inst. 1977)); accord Leang, 198 N.J. at 588. "The thrust of this . . . tort is . . . a person's private, personal affairs should not be pried into." Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982).

Plaintiff alleged that the prosecutor disclosed her name and the nature of the assault for political or personal reasons and with knowledge that release of this personal information would cause her harm. Reading the amended complaint liberally, as we must at this juncture, plaintiff has alleged sufficient facts to proceed on an intrusion on seclusion claim against the prosecutor. As currently alleged, a jury could find the disclosure "intrude[d] . . . upon [her]

27

private affairs or concerns" in a manner that was "highly offensive to a reasonable person." Leang, 198 N.J. at 588-90. Perhaps the prosecutor had good faith reasons for this in executing the law, N.J.S.A. 59:3-3, but that will need to await discovery.

It also is premature to dismiss the other defendants. The amended complaint alleges the other defendants were involved in the disclosure. We are required to accept that allegation, because of the timing of defendants' motions, which precludes dismissal at this time.

Count Five alleges the prosecutor was liable to plaintiff under the common-law tort of "unlawfully, unnecessarily and without [p]laintiff's consent[,] publiciz[ing] information concerning her private life, including her identity and information relating to the attack, the sexual assault, and the killing." The elements of this common-law cause of action are set forth in the Restatement:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his [or her] privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.
>
> [Castro v. NYT Television, 384 N.J. Super. 601, 610-11 (App. Div. 2006) (alteration in original) (quoting Restatement (Second) of Torts, § 652D).]

28

It would be highly offensive to a reasonable person to have disclosed the details of their sexual assault. See Romaine v. Kallinger, 109 N.J. 282, 297-98 (1988) (providing that where the plaintiffs were subject to "criminal victimization, personal degradation, and physical abuse" at the hands of a convicted criminal and sued the publisher of a book about the ordeal, publicization of "the suffering and degradation [plaintiffs] were forced to endure" would be offensive to a reasonable person).

As to the legitimate concern prong, we assume the facts as alleged by plaintiff, that her identity and the details of her assault were not public but were made public by the prosecutor for personal and political reasons. There may be legitimate, good faith reasons for the disclosures, but we are foreclosed from dismissing the prosecutor from Count Five of the amended complaint at this time.

It is premature to dismiss the other defendants. Count Five of the amended complaint alleges the other defendants "unlawfully, unnecessarily and without [p]laintiff's consent publicized information concerning her private life . . . ." We again are required to accept these allegations because of the timing of defendants' motions.

Count Six alleges a negligence claim against defendants for failing to ensure that plaintiff's "identity and information relating to the attack, the sexual assault and the killing were not disclosed to the public." She alleges defendants owed her a duty of ensuring compliance under the VRA and CVBOR, a duty as a crime victim, and a duty to exercise proper care in hiring qualified law enforcement officers, and training and supervising them with respect to the rights of crime victims.

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). "The determination of the existence of a duty of care to avoid harm to another is ultimately governed by fairness and public policy." Ibid. "Foreseeability is a critical but not dispositive factor in the analysis of whether a duty of care to avoid harm to a third party is recognized." Ibid.

Under the TCA, a public employee can be liable for negligence. The allegation here is that disclosure was made for political and personal reasons. This cause of action must await further factual development before we declare

30

whether there is a duty, the nature of the duty or the defenses that may or may not apply. We reverse the dismissal of this count against defendants.

Count Seven alleges the intentional infliction of emotional harm.[7] "In order for [a] plaintiff to prevail on an intentional infliction of emotional distress claim, [s]he must show: (1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." DeAngelis v. Hill, 180 N.J. 1, 20 (2004) (citing Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)).

To satisfy the second element of intentional infliction of emotional distress, the defendant's "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Buckley, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46 cmt. d, (Am. Law Inst. 1965)).

---

[7] Plaintiff acknowledges the State and the WCPO should be dismissed because this claim alleges intentional conduct. See N.J.S.A. 59:2-10 (providing a public entity is not liable for "acts or omissions of a public employee constituting . . . willful misconduct"). We see no reason why this result should not extend to the County and to the Attorney General in his official capacity under this Count and Count Four.

A-4920-18

Plaintiff has alleged that the prosecutor acted intentionally and willfully in making the disclosures for political reasons, and that this was "outrageous and extreme" conduct, which caused her severe emotional distress. On the face of the pleadings, these are sufficient to withstand a motion to dismiss under Rule 4:6-2(e). However, there is no allegation of disclosure against the Attorney General. Because this Count is premised on an intentional disclosure, we affirm the trial court's dismissal of Count Seven against the Attorney General in his individual capacity.

Count Eight alleges a cause of action for respondeat superior and vicarious liability against the State, County, WCPO and Attorney General. It alleges the prosecutor was acting within the scope of his employment and that these defendants are responsible for his actions. As we already noted, whether the prosecutor was acting in his law enforcement capacity under the supervision of the Attorney General, or in an administrative function when he made the alleged disclosures, cannot be determined at this time. Lavezzi, 219 N.J. at 178. At this stage of the litigation, there is enough to proceed on this theory of liability under the TCA. See N.J.S.A. 59:2-2(a) (providing "[a] public entity is liable for an injury proximately caused by an act or omission of a public employee within the scope of his employment . . . ."). We reverse the orders dismissing these claims,

although we note that Count Eight is not pleaded against defendants in their individual capacities.

We summarize our decision. Count One is dismissed against all defendants except the prosecutor in his individual capacity. Count Two is dismissed against all defendants. Count Three was abandoned by plaintiff. Counts Four through Eight remain with exceptions. The State, WPCO, County and Attorney General are dismissed from Counts Four and Seven because the claims allege intentional acts. See N.J.S.A. 59:2-10 (providing "[a] public entity is not liable for the acts or omissions of a public employee constituting . . . willful misconduct"). The Attorney General also is dismissed from Count Seven in his individual capacity. We add that the punitive damage claims in Counts Four through Seven must be dismissed against all defendants except for the prosecutor and Attorney General in their individual capacities. See N.J.S.A. 59:9-2(c) (providing no punitive damages "shall be awarded against a public entity"). Count Eight does not plead a cause of action against the prosecutor or Attorney General in their individual capacities, and any punitive damage claims must be dismissed against them in their official capacities.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4920-18